UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES ASIEDU YIRENKYI,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>U.S. CENTRAL INTELLIGENCE AGENCY, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 22-1376 (JEB) |

## MEMORANDUM OPINION

Plaintiff Charles Asiedu Yirenkyi's mother suffered significant injuries when, as a 13 year-old, she was allegedly coaxed into participating in a 1964 terrorist bombing in connection with a coup in Ghana. Now, nearly six decades later and after his mother's recent death, Yirenkyi brings this personal-injury *pro se* suit against the Central Intelligence Agency, the Republic of Ghana, and a number of other foreign governments. He alleges that because these Defendants provided technical and financial support for the coup attempts, he may recover damages from them under the Foreign Sovereign Immunities Act, the Alien Tort Statute, and the Torture Victims Protection Act. Defendants CIA and the Republic of Ghana now separately move to dismiss. Because Plaintiff's stated claims are all barred by sovereign immunity, the Court will grant the Motions.

**I.　　Background**

The Court draws the following facts from the Complaint and accepts them as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

1

The story behind this lawsuit begins six decades ago in Accra, Ghana, with an attempted *coup d'état*. According to the Complaint, Komla Agbeli Gbedemah, then-Finance Minister, sought to overthrow his country's government in the 1960s. See ECF No. 1 (Compl.), ¶¶ 2, 5, 33–34. In service of that effort, he commanded a series of extrajudicial killings and terrorist bombings. Id., ¶ 4. The President at that time, Dr. Kwame Nkrumah, was the target of at least one of those bombings, which incident is at the core of our controversy.

The details of the plan for that particular attack are not entirely clear from the Complaint. But the general conceit appears to have been to disguise a bomb in a flower bouquet and recruit a young, unknowing school child to hand that bouquet to President Nkrumah. Id., ¶ 2. Gbedemah and his confederates tapped 13-year-old Elizabeth Asantewaa for the job. Id. Asantewaa did as she was instructed. When the bomb exploded, however, she was severely injured and lost her foot. Id. Asantewaa died in 2022, but she left a son, Charles Asiedu Yirenkyi, who now brings this suit as the administrator and executor of his mother's estate. Id.

The Complaint contains eight counts under the Foreign Sovereign Immunities Act, the Alien Tort Statute, and the Torture Victim Protection Act, id., ¶¶ 8, 35–66 (citing 28 U.S.C. §§ 1605A(c)(4), 1350), and names five Defendants: the CIA, the United Kingdom, France, Germany, and Ghana. Yirenkyi alleges, in part, claims of wrongful death, torture, loss of consortium, assault and battery, intentional infliction of emotional distress, civil conspiracy, and aiding and abetting. Id., ¶¶ 35–60. He contends that each Defendant played an indispensable role in Gbedemah's attempted coup and, more specifically, in the flower-bouquet bombing. He maintains, for example, that Defendants provided "technical know-how," "tactical training[,]" and other material support and resources to Gbedemah, without which the Finance Minister could not have grown a "terrorist[] group capable of producing a 'Flower Bouquet Bomb' used

in the injury of Elizabeth Asantewaa." Id., ¶¶ 4–5.  Plaintiff seeks $100 million in damages for the injuries, suffering, and other losses inflicted on his mother and on him by the incident. Id., ¶¶ 67–70.

Two of the Defendants — the CIA and Republic of Ghana — now separately move to dismiss for lack of jurisdiction.  See ECF No. 20 (CIA MTD); ECF No. 21 (Ghana MTD). Service has not yet been effected on the others.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint for lack of subject-matter jurisdiction.  In general, courts must first address jurisdictional arguments before turning to the merits.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 430–31 (2007).  A plaintiff bears the burden of proving that the court has subject-matter jurisdiction to hear her claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.   Analysis**

The Court will consider the CIA's and Ghana's Motions in turn.

A.  CIA

In seeking dismissal, the CIA principally argues that this Court has no jurisdiction because the United States has not waived its sovereign immunity from suit. See CIA MTD at 5–7. Additionally, even if Plaintiff's Complaint is construed broadly as one under the Federal Tort Claims Act (for which some waiver exists), the Government maintains that Yirenkyi has failed to administratively exhaust his remedies and that his claims fall into the foreign-country and intentional-tort exceptions to that waiver. Id. at 8–11. The Court agrees on both counts.

*1.   Sovereign Immunity*

"Sovereign immunity bars suits against the United States, its agencies, and its employees sued in their official capacities, absent a waiver." Jarvis v. Kijakazi, No. 21-1523, 2022 WL 4464985, at *2 (D.D.C. Sept. 26, 2022) (citing Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 475 (1994)). It is well established that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (citation omitted). Where sovereign immunity has been waived, that waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." Id.

In his Opposition to the CIA's Motion to Dismiss, Yirenkyi relies exclusively on the recently passed Justice for Victims of War Crimes Act to argue that his claims are not barred by sovereign immunity. See ECF No. 38 (Opp. to CIA MTD) at 11–18. That Act modified the existing War Crimes Act, which criminalizes "grave breach[es] in any of the international conventions signed at Geneva 12 August 1949" and committed by United States military personnel or a national of the United States. See 18 U.S.C. § 2441(b), (c)(1). The new Justice

4

for War Crimes Act extended federal jurisdiction to also cover crimes committed by any "offender [who] is present in the United States, regardless of the nationality of the victim or the offender" and for any "offenses [that] occurs in whole or in part within the United States." Justice for Victims of War Crimes Act, Pub. L. No. 117-351, § 2, 136 Stat. 6265, 6265 (2023). What that Act did not do, however, was include any new language "unequivocally express[ing]" a waiver of the federal government's sovereign immunity. Lane, 518 U.S. at 192. That makes sense because the War Crimes Act is a criminal statute and does not include any private right of action for its enforcement. See Sai v. Trump 325 F. Supp. 3d 68, 71–72 (D.D.C. 2018) (declining to find private right of action in original War Crimes Act); Jawad v. Gates, 113 F. Supp. 3d 251, 258–59 (D.D.C. 2015), aff'd, 832 F.3d 364 (D.C. Cir. 2016) (same). As a result, it cannot support Yirenkyi's claims against a federal entity such as the CIA.

Neither do any of the other statutes Plaintiff cites in his Complaint support a waiver of sovereign immunity. The FSIA, for example, applies only to "foreign state[s]," not the United States. See 28 U.S.C. § 1603 (defining "foreign state" for purposes of FSIA); id. § 1605 (waiving sovereign immunity for foreign states under certain circumstances). The ATS vests federal district courts with "original jurisdiction [over] any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States," 28 U.S.C. § 1350, but that statute "itself is not a waiver of sovereign immunity." Sanchez-Espinoza v. Reagan, 770 F.2d 202, 207 (D.C. Cir. 1985); see El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 858 (D.C. Cir. 2010) (*en banc*) (Kavanaugh, J., concurring) ("The Alien Tort Statute has never been held to cover suits against the United States or United States Government officials."). Finally, the TVPA creates liability for individuals who engage in "torture or extrajudicial killing," Harbury v. Hayden, 444 F. Supp. 2d 19, 40 (D.D.C. 2006) (citing Torture Victim

5

Protection Act, Pub. L. No. 102-256, § 2, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 Note)), but that liability "does not extend to suits against American officials except in the unusual case where such an official acts 'under color of foreign law.'" El-Shifa Pharm. Indus. Co., 607 F.3d at 858 (Kavanaugh, J., concurring). Like the other statutes Plaintiff cites, it also does not "contain[ any] language authorizing a lawsuit against the United States." Escarria-Montano v. United States, 797 F. Supp. 2d 21, 24 (D.D.C. 2011).

Because the FSIA, the ATS, and the TVPA include no express waiver of sovereign immunity, they cannot help Yirenkyi clear this bar.

### 2.   *FTCA Claim*

As the Government next recognizes, the only claim that he could likely bring against the United States would be one "pursuant to the limited waiver of sovereign immunity [found] in the FTCA." Benoit v. U.S. Dep't. of Agric., 608 F.3d 17, 20 (D.C. Cir. 2010); CIA MTD at 7–8. Although Yirenkyi himself appears to concede that he cannot bring such a claim, see Opp. to CIA MTD at 11; ECF No. 40 (CIA Reply) at 4–5, the Court will nevertheless broadly construe his Complaint to encompass potential claims under the Act. See Turner v. Corr. Corp. of Am., 56 F. Supp. 3d 32, 35 (D.D.C. 2014) (noting courts must construe *pro se* plaintiffs' complaints liberally).

In order to obtain the FTCA's waiver of sovereign immunity, a plaintiff must "have exhausted his administrative remedy before filing suit." Benoit, 608 F.3d at 20 (citations omitted); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (failure to exhaust administrative remedies in FTCA case jurisdictional). To satisfy the FTCA's administrative-

exhaustion requirements, a plaintiff must first present his claim in writing to the appropriate federal agency within two years of the claim's accrual. See 28 U.S.C. § 2401(b). Unsurprisingly given his apparent concession that the FTCA is not the appropriate vehicle for his suit, Yirenkyi has not pled any facts to show that he exhausted his administrative remedies. On the contrary, he alleges in his Complaint that he was not required to do so. See Compl., ¶ 10. For this reason alone, any potential FTCA claims he may have intended to bring merit dismissal. See Smalls v. Emanuel, 840 F. Supp. 2d 23, 35 (D.D.C. 2012) ("Failure to comply with the administrative requirements of the FTCA deprives the Court of jurisdiction to hear the case.").

Even had Yirenkyi performed such exhaustion, however, any potential claims would still run headlong into the foreign-country and intentional-tort exceptions to the FTCA's waiver of sovereign immunity. First, the "FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." Sosa v. Alvarez-Machain, 542 U.S. 692, 712 (2004) (emphasis added). This includes claims for "acts or omissions occurring [in the United States] which have their operative effect in another country." Id. at 701 (quoting Sami v. United States, 617 F.2d 755, 761 (D.C. Cir. 1979) (rejecting the so-called "headquarters doctrine" theory of liability for FTCA claims against United States). Plaintiff's Complaint makes clear that the relevant tortious act for which he seeks compensation — namely, the 1964 bombing and the "severe injuries" Yirenkyi's mother suffered as a result — occurred in Ghana 58 years ago. See Compl., ¶¶ 12, 34. The foreign-country exception therefore bars recovery for those injuries.

To the extent that Plaintiff is alleging that the conspirators intended to kill or injure his mother in the incident, the intentional-torts exception independently counsels the same result. Under that exception, the FTCA's waiver of sovereign immunity does not apply to "any claim

7

arising out of" certain intentional torts, including assault and battery. See 28 U.S.C. § 2680(h) (emphasis added); Millbrook v. United States, 569 U.S. 50, 52–53 (2013). Plaintiff raises a host of common-law tort claims in his Complaint, including wrongful death, survival, loss of consortium, loss of solatium, and intentional infliction of emotional distress. See Compl., ¶¶ 8(b), 35–60. But, at their core, each arises from the central allegation underpinning the entire Complaint: the alleged assault/battery sustained by Yirenkyi's mother in connection with the 1964 bombing. As a result, they fall under the FTCA's exception for claims arising out of intentional torts and are ineligible for recovery. See United States v. Shearer, 473 U.S. 52, 55 (1985) ("Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery.").

\*   \*   \*

Because neither the FTCA nor any of the other statutes Plaintiff relies on in his Complaint establish a waiver of sovereign immunity by the United States, the Court will dismiss Yirenkyi's suit against the CIA for lack of jurisdiction.

B.  Ghana

The Republic of Ghana similarly argues that this Court has no jurisdiction to hear Yirenkyi's claims against it. The Court will consider Plaintiff's theories of jurisdiction in turn.

1. *Foreign Sovereign Immunities Act*

Because Ghana is a foreign sovereign, the jurisdictional inquiry necessarily begins with the FSIA, which "supplies the ground rules for 'obtaining jurisdiction over a foreign state in the courts of this country.'" Fed. Republic of Germany v. Philipp, 141 S. Ct. 703, 709 (2021) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 433 (1989)). The FSIA first establishes a presumption that foreign states are immune from suit, and then

enumerates various exceptions to that immunity.  See 28 U.S.C. §§ 1604, 1605, 1605A.  Unless one of those "specified exception[s] applies, a federal court [both] lacks subject-matter jurisdiction over a claim against a foreign state," Philipp, 141 S. Ct. at 709 (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993)), and lacks personal jurisdiction over the state.  Amerada Hess, 488 U.S. at 435 n.3 ("[P]ersonal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in §§ 1605–1607 applies.").  Plaintiff invokes two of those exceptions.

###### a.  Terrorism Exception

Yirenkyi primarily relies on the terrorism exception.  See Compl., ¶ 3 (asserting subject-matter jurisdiction under 28 U.S.C. § 1605A).  That exception abrogates a foreign state's immunity in cases where "money damages are sought . . . for personal injury or death that was caused by an act of torture, extrajudicial killing, . . . or the provision of material support or resources for such an act."  28 U.S.C. § 1605A(a)(1).  Where the alleged act of terrorism occurred in the foreign state against which the claim has been brought — which is the case here — there are four statutory requirements for jurisdiction: (1) the foreign state must have been designated as a state sponsor of terrorism by the State Department when the act of terrorism occurred and when the action was filed; (2) the claimant or victim must have been a U.S. national at the time of the act; (3) the claimant must have afforded the foreign state a chance to arbitrate the claim; and (4) the claimant must be seeking damages for personal injury or death caused by the act.  See 28 U.S.C. § 1605A(a), (h)(6); Sotloff v. Syrian Arab Republic, 525 F. Supp. 3d 121, 134 (D.D.C. 2021).  Neither the first nor the second requirement is satisfied here.

As to the first, Ghana has never been designated a state sponsor of terrorism, and Plaintiff does not allege otherwise.  See Ghana MTD at 7–8.  He merely insists that there is jurisdiction

because Gbedemah himself is a "terrorist." ECF No. 39 (Opp. to Ghana MTD) at 9. Even if Yirenkyi were correct about Gbedemah, though, it would make no difference. The terrorism exception applies only when the foreign state is designated as a sponsor of terrorism. That Ghana has never been so designated is thus an independent reason this Court lacks jurisdiction. See 28 U.S.C. § 1605A(a)(2)(A)(i).

Plaintiff fares no better with the second requirement. The Court may fairly presume that Yirenkyi, who admits to currently being a non-U.S. national, was similarly not a U.S. national when the bombing occurred. See Compl., ¶ 2 ("Plaintiff . . . is a citizen of Ghana and a non-U.S. National."). Indeed, it seems more likely than not that he had not yet been born when Asantewaa was injured. Id. (noting that she was 13 at time of bombing). Jurisdiction would also exist if the victim — that is, Asantewaa — was a U.S. national at the time of the act of terrorism. See 28 U.S.C. § 1605A(a)(2)(A)(ii). Despite it being his burden to establish jurisdiction, however, Yirenkyi nowhere alleges that his mother was ever a U.S. national, much less that she was a U.S. national in 1964. Lujan, 504 U.S. at 561. His failure on this requirement provides a second, independent reason to dismiss the Complaint against Ghana for lack of jurisdiction.

Even setting aside the substantive elements of the terrorism exception, this Court could not hear Plaintiff's claim under that exception for a third independent reason: he is past the statute of limitations. An action may be brought under § 1605A "not later than the latter of (1) 10 years after April 24, 1996; or (2) 10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). The cause of action here arose in 1964, the year of the bombing, see Compl., ¶ 2, which means that the window for anyone to bring a terrorism-exception claim closed on April 24, 2006. That deadline is long past.

Finally, Yirenkyi invokes in passing § 1605B of the FSIA, which provides another terrorism-related exception to immunity.  See Opp. to Ghana MTD at 10, 34.  That provision, however, extends only to cases where damages are sought for "physical injury to person or property or death <u>occurring in the United States</u>."  28 U.S.C. § 1605B(b) (emphasis added).  Because none of the injuries complained of occurred here, that provision cannot apply.

### b. Other Exceptions

Plaintiff also nods to two other FSIA exceptions: the noncommercial-tort exception and the commercial-activity exception.  Neither offers any aid.  The former extends only to cases where damages are sought for injury or death "occurring in the United States."  28 U.S.C. § 1605(a)(5).  The injury complained of here, as well as the act precipitating it, was inflicted in Ghana.  See Ghana MTD at 10; <u>Doe v. Fed. Dem. Rep. of Ethiopia</u>, 851 F.3d 7, 10 (D.C. Cir. 2017) (noting that "entire tort — including not only the injury but also the act precipitating that injury — must occur in the United States" for noncommercial-tort exception to apply).  The commercial-activity exception, on the other hand, extends to cases based on acts that occurred in a foreign state "in connection with a commercial activity of the foreign state" and that caused "a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Yirenkyi draws no connection between the bombing and commercial activity by the Republic of Ghana, much less commercial activity that caused a direct effect in the United States.  See Opp. to Ghana MTD at 10–11 (mentioning commercial-activity exception and citing case discussing it but offering no explanation for related commercial activity).

The Court thus concludes that no FSIA exception applies to Yirenkyi's claims against Ghana.

11

*2.  ATS/TVPA*

Plaintiff implies that, in the alternative, he is seeking to establish jurisdiction under the ATS and the TVPA.  See 28 U.S.C. § 1350 & note; Compl., ¶ 8.  That is a futile effort.  The Supreme Court has decisively held that the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts."  Amerada Hess, 488 U.S. at 434.  The ATS and TVPA thus "do[] not confer any waiver of foreign sovereign immunity."  Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 17 (D.C. Cir. 2015).

\*    \*    \*

In sum, because Plaintiff has failed to satisfy any of the statutory exceptions to sovereign immunity, the Court must also dismiss the claims against Ghana for lack of jurisdiction.

**IV.  Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss.  A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 17, 2023